UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERYL P.,[1] <br><br> Plaintiff, <br><br> v. <br><br> ANDREW M. SAUL, Commissioner of Social Security, <br><br> Defendant. | Case No. SA CV 20-00525-RAO <br><br><br> **MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Sheryl P. ("Plaintiff") challenges the denial by the Commissioner of Social Security ("Defendant") of her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). She contends that the Administrative Law Judge ("ALJ") erred when he found that her chronic obstructive pulmonary disease ("COPD") did not equal a listed impairment and when he discounted her subjective symptom testimony. For the reasons stated below, the decision of the Commissioner is AFFIRMED.

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. SUMMARY OF PROCEEDINGS

On May 20, 2016, Plaintiff filed a Title II application for DIB and, on February 21, 2018, she filed a Title XVI application for SSI, alleging that she had been disabled since November 30, 2015, due to asthma, high blood pressure, COPD, "Parkinson's in neck," and acid reflux. (Administrative Record ("AR") 273-74, 279-82, 306.) Her applications were denied initially and upon reconsideration and she requested and was granted a hearing before an ALJ. (AR 181-97.) Following a hearing on November 6, 2018, at which Plaintiff appeared with counsel, the ALJ found that Plaintiff had not been disabled at any time from her alleged onset date through the date of decision. (AR 24-37, 122-47.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-7.) This action followed.

## III. DISCUSSION

Plaintiff contends that the ALJ erred when he found that her COPD did not equal a listed impairment and when he discounted her testimony regarding her limitations. (JS at 4-6, 9-10.)

The ALJ followed the five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At step two, the ALJ found that Plaintiff's "asthma/COPD," hypertension, obesity, carpal tunnel syndrome, spasmodic torticollis, lower extremity neuropathy, and diabetes mellitus were severe impairments. (AR 30.) At step three, the ALJ concluded that none of Plaintiff's impairments met or equaled any impairment listed in the regulations that would by itself establish disability, including Listing 3.02 for chronic respiratory disorders. (AR 30-31.)

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (as relevant to the claims raised before the Court) to perform sedentary work but would be limited to: only occasional postural activities; no

crawling or climbing; no work at unprotected heights or around dangerous moving machinery; no concentrated exposure to humidity, wetness, or extremes in cold or heat or to dusts, odors, fumes, or other pulmonary irritants. (AR 31.) In reaching this finding, the ALJ rejected Plaintiff's testimony that she cannot sit for longer than "about a half hour or so" before she gets "real achy"; she needs to alternate between laying down, sitting, and standing; and she has "three to four bad days" each week when she does not think she could work at all. (AR 133-35.) At step four, the ALJ determined that Plaintiff could perform her past relevant work as a telephone solicitor/salesperson, customer complaint supervisor, and advertising sales representative as she actually performed those jobs, according to the testimony of a vocational expert. (AR 35-36.) Accordingly, the ALJ found that Plaintiff was not disabled. (AR 36.) For the reasons below, the Court affirms.

### A. Listing 3.02A

Plaintiff contends that the ALJ erred when he failed to properly consider whether her COPD equaled Listing 3.02A for chronic respiratory disorders. That listing provides as follows:

"3.02 Chronic respiratory disorders due to any cause except [cystic fibrosis] . . . with A, B, C, or D: A. $FEV_1$ (see 3.00E) less than or equal to the value in Table I–A or I–B for your age, gender, and height without shoes (see 3.00E3a)."

20 C.F.R. P. 404, Subp. P, App'x 1 § 3.02A.[2]

According to Table I-A of Listing 3.02A, a woman over the age of 20 who is less than 67 inches tall meets the listing for a chronic pulmonary insufficiency when she has a $FEV_1$ value equal to or less than 1.45. The medical record contains three spirometry reports from the period between August 2015 and January 2017. (AR 390, 405, 644.) The parties do not dispute the ALJ's finding that Plaintiff did not *meet* the requirements of 3.02A because her highest $FEV_1$ values in each report were

---

[2] Section 3.00C.10 defines $FEV_1$ as the "forced expiratory volume in the first second of a forced expiratory maneuver."

1.74 in August 2015, 1.47 in August 2016, and 1.60 in January 2017. (AR 30-31.) Nevertheless, Plaintiff argues that the ALJ should have considered the evidence in the record that her asthma is moderate to severe and her lung function is poor in combination with the evidence that she is obese and explained why the cumulative effect of that evidence did not *equal* Listing 3.02A. (JS at 4-6.)

"At the third step of the evaluation, a claimant's impairment or combination of impairments is *medically* equivalent to a listed impairment—establishing a disability and ending the five-step inquiry—if the claimant's impairment or combination of impairments 'is at least equal in severity and duration to the criteria of any listed impairment.' 20 C.F.R. § 416.926(a)." *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). A claimant must, therefore, "present medical findings equal in severity to all the criteria for the one most similar listed impairment" in order to establish equivalency, *Sullivan v. Zebley*, 493 U.S. 521, 531, 110 S. Ct. 885, 107 L. Ed.2d 967 (1990), and may not rely simply on "overall functional impact." *Kennedy*, 738 F.3d at 1176.

Plaintiff has not presented medical findings that are "equal in severity" to the criterion for Listing 3.02A, which is concerned only with the volume of air that an individual with COPD can expire in one second. Although her claim might be construed as an argument that her other impairments cumulatively would contribute to a lower $FEV_1$ value, Plaintiff has failed to show or explain why the $FEV_1$ measurements do not themselves capture the limitations that arise from asthma, lung function, and obesity. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy*, 738 F.3d at 1176 (quoting *Zebley*, 493 U.S. at 532). The ALJ did not err when he concluded that she had not equaled the listing requirement for 3.02A.

Nor does Plaintiff's contention that the ALJ failed to adequately explain his evaluation of the listings have any merit. "An ALJ is not required to discuss the

4

combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart,* 400 F.3d 676, 683 (9th Cir. 2005). Here, Plaintiff averred that she equaled Listing 3.02A in the Statement of the Case that she submitted to the ALJ before the administrative hearing but provided no rationale or explanation as to why. (AR 369-71.) Because she did not properly raise an argument for equivalency before the ALJ, he did not err by declining to discuss the issue in any greater detail. *See Kennedy*, 738 F.3d at 1178.

### B. **Plaintiff's Subjective Symptom Testimony**

Plaintiff contends that the ALJ erred when he did not provide clear and convincing reasons for rejecting her testimony but merely summarized the treatment record. (JS at 9-10.) For the following reasons, the Court finds that the ALJ did not err.

Where, as here, the claimant has presented evidence of an underlying impairment and the ALJ did not make a finding of malingering (*see* AR 31-32), the ALJ must "evaluate the intensity and persistence of [the] individual's symptoms . . . and determine the extent to which [those] symptoms limit [her] . . . ability to perform work-related activities." Soc. Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *4. In assessing the intensity and persistence of symptoms, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements . . . ; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The ALJ must provide specific, clear and convincing reasons for rejecting the claimant's statements. *Trevizo v. Berryhill,* 871 F.3d 664, 678 (9th Cir. 2017) (citation omitted). The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

Plaintiff testified that "most days" she feels like there was an "elephant sitting on my chest" because her breathing condition makes it hard for her to get enough air. (AR 129.) She testified that she might need to use her inhaler several times, especially if it is humid and the pollen count is high. (AR 129-30.) She testified that she has a friend go shopping with her to go up and down stairs and to lift and carry the bags. (AR 131.) Plaintiff testified that if she sits for a half hour or so she gets "real achy" and her pain medicine makes her shaky and jittery so that she needs to stand up and move around. (AR 131-32.) She testified that she has a hard time walking if her neuropathy is acting up. (AR 132.) Plaintiff also testified that she does not drive because her spasmodic torticollis means she is not able to turn her head. (AR 133.) She testified that she lies down three to four times a day and that she spends her day alternating between laying down on the couch, sitting for a little, and standing for a little. (AR 133-34.) She testified that she does not make her own meals, clean the house, or do laundry. (AR 134.) Plaintiff testified that she did not think she could hold down a job because she never knows when she is going to have a bad day and she has three to four bad days each week. (AR 135.) She testified that she takes over the counter medication for pain as well as other medication for her diabetes, asthma, and COPD, including Prednisone, though she does not like how it makes her feel. (AR 136-37.)

In his decision, the ALJ found that Plaintiff's testimony was not consistent with the medical and other record evidence. (AR 32.) Further, the ALJ detailed exactly which parts of the record contradicted or undermined Plaintiff's testimony regarding her limitations. His findings are supported by substantial evidence, as follows.

First, the ALJ noted that Plaintiff claimed in June 2016 that she used a cane but there was no testimony or medical evidence about the cane. (AR 32.) In a June 2016 exertion questionnaire, Plaintiff stated that whenever she walked outside her house, she had her inhaler and her cane in her hands. (AR 313, 315.) In October

2018, however, Plaintiff's treating physician indicated that Plaintiff did not use a cane. (AR 1106.) Nor did Plaintiff testify that she used a cane. The ALJ was entitled to consider inconsistent statements in her testimony as a basis for finding that testimony less than credible. *See Burch*, 400 F.3d at 680.

The ALJ observed that while Plaintiff was being treated for three months in 2017 by Dr. Robby Ayoub, a pulmonologist, her respiratory and lung examinations were unremarkable. In addition, she consistently denied shortness of breath, chest pain, and an inability to perform normal daily activities. (AR 32-33.) Dr. Ayoub's records from Orange County Critical Care and Pulmonary show that he began to treat Plaintiff following her January 2017 discharge after she was admitted to hospital for asthma exacerbation and shortness of breath. (AR 503-05, 640.) On January 26, 2017, Dr. Ayoub noted lung dysfunction and a severely reduced $FEV_1$, decreased lung flow and capacity, which was consistent with "mild restrictive disease." (AR 642.) Dr. Ayoub noted, however, that there was significant improvement after use of a bronchodilator. (AR 642.) On the following day, January 27, 2017, Plaintiff reported that she was doing "very well" and that her appointment with Dr. Ayoub had gone well. (AR 711.) On February 27, 2017, treating physician Dr. Dean Ba Ngo examined Plaintiff and found that her breath sounds were normal and her lungs clear. (AR 625.) Likewise, on March 7 and 28, 2017, Dr. Ayoub noted Plaintiff's normal breathing pattern. (AR 632, 637.)

As the ALJ noted, it appears that Plaintiff stopped seeing Dr. Ayoub, or another pulmonologist, after March 2017. (AR 33.) In October 2018, Dr. Ellen Reich noted Plaintiff's apparent comment that she stopped seeing Dr. Ayoub because "she didn't like him." (AR 1130.) The ALJ was permitted to consider Plaintiff's failure to follow a course of treatment in making his adverse credibility determination. *See, e.g., Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

The ALJ noted that Plaintiff's September 2018 report of increased asthma symptoms was not supported by the physical examination findings. (AR 33.) On

September 22, 2018, Plaintiff complained that her asthma had been getting worse as of two weeks before. (AR 822.) Dr. Ngo's examination, however, revealed no cough, pleurisy, or shortness of breath. Plaintiff's lungs were clear and sounded normal. (AR 825.) Similarly, the ALJ noted that in October 2018 Plaintiff complained of, among other things, wheezing and chest tightness. (AR 33.) On October 24, 2018, Dr. Reich's examination revealed only some swelling in Plaintiff's nose. (AR 1030-31.) Inconsistencies between subjective complaints and specific medical evidence constitute "significant and substantial reasons" for finding a claimant's testimony less than credible. *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007).

The ALJ noted that Plaintiff's complaint that her medications made her jittery was repeated only once in the medical records. (AR 33.) Indeed, on November 1, 2018, Plaintiff complained of this side effect to Dr. Reich. (AR 1132.) The ALJ's finding that this was an isolated complaint is supported by the record.

The ALJ noted that Plaintiff's diabetes was controlled with medication and that, although Plaintiff complained at times in 2017 of pain in her legs that was associated with her diabetes, such complaints were not evident in subsequent medical records. (AR 33-34.) In August 2018, Dr. Ngo reported that Plaintiff had lost weight and planned to resume exercising once the weather cooled down. (AR 463.) In a September 22, 2018 progress note, Dr. Ngo remarked that Plaintiff's peripheral neuropathy in her feet was improving. (AR 827.)

The ALJ pointed to Plaintiff's testimony that she ached if she sat for too long but also noted her testimony that she took only over-the-counter medications for her pain. (AR 34, 132, 136.) The ALJ was entitled to discount Plaintiff's testimony regarding her pain on this basis. *See, e.g.*, *Parra*, 481 F.3d at 750-51.

In sum, the Court finds that the ALJ carefully evaluated the medical record and identified the evidence that supported Plaintiff's allegations of limitation as well as the evidence that was inconsistent with or otherwise undermined her statements,

as provided by SSR 16-3p. His findings are supported by substantial evidence and will not be disturbed. *See Tommasetti*, 533 F.3d at 1039 ("If the ALJ's [credibility] finding is supported by substantial evidence, the court may not engage in second-guessing.") (quotation omitted).

## IV.  CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED:   November 24, 2020

*/s/ Rozella A. Oliver*
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**